State of Minnesota v. City of St. Anthony.

## STATE OF MINNESOTA ex rel. D. A. SECOMBE VS. THE CITY OF ST. ANTHONY.

The 9th section of an act approved Feb. 28, 1860, entitled "An act for the support and better regulation of common schools in the City of St. Anthony," is in the following language: "That whenever said board [of Education] shall deem it necessary to purchase or erect a school house or school houses for said district, or to purchase a site or sites for the same, they shall call a meeting of the legal voters in said district, by giving at least ten days notice of the time and place and object of said meeting in some newspaper printed in and in general circulation in said district; and the President of said Board, and in his absence one of the other directors, shall act as chairman of said meeting, and said meeting may determine by a majority vote upon the erection of a school house or school houses, and the purchase of a site or sites therefor, and the amount of money to be raised for the purpose aforesaid; which money so voted shall be thereupon certified by the Board of Education, by its President and Secretary, to the City Council; and thereupon the said City Council shall within thirty days thereafter proceed to levy such amount of money upon the taxable property in said district; said tax to be levied and collected as other taxes of said city are levied and collected, and to be paid over as soon as collected to the Treasurer for said Board of Education." *Held*—on an application for mandamus, that under this section,—1. A preamble in the following language, "Whereas it is deemed necessary by the Board of Education of the City of St. Anthony to purchase a site or sites and to erect thereon a school house or school houses for the school district comprised within the limits of the said city of St. Anthony," &c., adopted by said Board, with a resolution calling a meeting of the legal voters, was sufficiently definite to justify them in calling such a meeting. 2. That the meeting of legal voters must determine upon the number of houses to be erected and the number of sites to be purchased, and must specify a definite and certain sum of money for such purpose, and that this action must precede the levying of the tax.

This is an application for a peremptory writ of mandamus, upon the relation of David A. Secombe, to compel the City Council of St. Anthony to levy a tax, &c.

The contents of the information upon which such writ is prayed for are sufficiently set forth in the opinion of the Court.

D. A. Secombe for the Application.

Wm. Lochren for City of St. Anthony.

*By the Court*—McMillan, J.—By an act of the Legislature approved February 28th, 1860, entitled "An act for the support and better regulation of common schools in the City of St. Anthony," it is provided that the City of St. Anthony from and after the first Tuesday in March next after the passage of the law, shall constitute but one school district. The act also provides for the election of a board of six directors, and prescribes the mode of their organization and qualification, and creates them a body politic and corporate under the style of "The Board of Education of the City of St. Anthony," and confers upon them sundry corporate powers.

The ninth section of the act is as follows: "That whenever said board shall deem it necessary to purchase or erect a school house or school houses for said district, or to purchase a site or sites for the same, they shall call a meeting of the legal voters in said district, by giving at least ten days' notice of the time and place and object of said meeting in some newspaper printed in and in general circulation in said district; and the president of said board, and in his absence one of the other directors, shall act as chairman of said meeting, and said meeting may determine by a majority vote, upon the erection of a school house or school houses, and the purchase of a site or sites therefor, and the amount of money to be raised for the purpose aforesaid, which money so voted shall be thereupon certified by the Board of Education, by its President and Secretary, to the City Council; and thereupon the said City Council shall, within thirty (30) days thereafter, proceed to levy such amount of money upon the taxable property in said district; said tax to be levied and collected as other taxes of said city are levied and collected, and to be paid over as soon as collected to the Treasurer for said Board of Education."

Proceeding under this section the Board of Education at a regular meeting adopted the following resolution: "Whereas it is deemed necessary by the Board of Education of the City of St. Anthony to purchase a site or sites and to erect thereon a school house or school houses, for the school district comprised within the limits of the said city of St. Anthony, now therefore, be it

"*Resolved*, By said Board of Education, that a meeting of the legal voters of said school district be called and that the same be held on the 20th day of June, A. D. 1865, at seven and one half o'clock P. M. of that day in the City Council room of said City, for the purpose of determining upon the erection of such school house or school houses and the purchase of a site or sites therefor, and the amount of money to be raised for that purpose, and that notice of said meeting be given," &c., prescribing fully the notice to be given.

The meeting of the legal voters was regularly held pursuant to the notice, and by a majority vote adopted the following resolution:

"*Resolved*, That this meeting determine upon the erection of a school house or school houses in this district and the purchase of a site or sites therefor, and that the amount of two (2) per cent. on the assessment of the city of the present year be raised for the purpose aforesaid, the said site or sites and the kind of house or houses to be determined hereafter by the district."

This resolution was regularly certified to the City Council of the City of St. Anthony, and the City Council refused to levy the tax.

The relator, David A. Secombe, now applies for a peremptory mandamus to compel the levy of the tax. Several objections are urged to granting the writ which we proceed to consider. The first objection urged by the respondent is that the resolution of the *Board of Education* calling the meeting of legal voters is insufficient, because they came to no definite conclusion as to the necessity of building houses or purchasing sites, nor did they decide whether one or twenty houses or sites are necessary.

The judgment of the board as to the necessity for a school house or school houses, &c., is only preliminary, and for the purpose of calling the meeting of legal voters. The authority to de-

termine upon the purchase of sites or the erection of houses under this section is vested in the meeting of voters and not in the Board of Education. The power of the meeting is not limited or controlled by the action of the board, but when convened the power of the meeting is general and exclusive. The power of the board to call a meeting of the legal voters of the district does not depend upon the number of houses or sites they deem necessary to erect or purchase, but upon the necessity for *any* such erection or purchase; if this necessity is deemed by the board to exist it is all that can be required, for no subsequent action requires greater certainty; and except for the purpose of calling the meeting, the judgment of the board is immaterial. If, therefore, the calling of the meeting is not of itself sufficient in any case to show the existence, in the judgment of the board, of the necessity contemplated by the act, certainly the resolution of the board in the language of the statute shows the necessity in their judgment of the erection of one or more school houses; the exact number is unimportant since the meeting must determine the number to be erected irrespective of the judgment of the board. This objection is not well taken.

The second, third and fourth objections go to the action of the meeting of voters and may be considered together. It is urged that the action of the meeting is void, because it does not determine definitely the number of school houses to be erected or sites to be purchased, nor the amount of money to be raised.

In the distribution of the powers conferred by this act, the Legislature have carefully distinguished between the establishment and maintenance of schools provided for in this act, and the purchase of sites and erection of school houses for the district.

By the sixth section of this act it is made the duty of the Board of Education to establish certain schools in the district as soon as funds are realized for the purpose, and the eighth section requires them to report to the City Council of St. Anthony the amount of taxes they deem necessary to be raised to defray all the incidental expenses of maintaining said schools during the current year, and provides for its levy and collection. And throughout

the whole act it will be seen that the board have complete and entire control of the establishment and maintenance of the schools, and are furnished with all the means and powers necessary for this purpose.

But by the ninth section of the act—cited *ante*—the power to determine upon the erection of school houses and the purchase of sites therefor, and the amount of money to be raised for that purpose, is conferred upon the meeting of legal voters of the district mentioned in said section.  There can be no doubt that the power conferred by this section is general, extending to all school houses and sites erected or purchased under this section, and we think it is equally evident that it was the intention of the act to confer this power exclusively upon the voters.  Whatever, therefore, is an exercise of this power must be done by the meeting and not by any other body—the action of the meeting then must be full and complete in itself; to render it so we think it is necessary that it should be definite and certain as to the number of houses to be erected, and sites to be purchased, for if the action be indefinite, as it is in this instance, in regard to the number of houses and sites, how can it be ascertained whether the meeting determined to erect one house or ten houses, to purchase one site or ten sites? and if the board should undertake to determine for themselves the number to be erected, it would be the exercise of power not possessed by them.  Again, the sum of money voted to be raised must be used for the purpose determined by the meeting.  The sum raised must have reference to the purposes determined upon.  It would seem therefore that the purpose must be definite and specific, otherwise how can the board ascertain whether they shall apply the fund to the erection of one house and one site, or ten houses and ten sites, or one house and ten sites?  Clearly there is no means of ascertaining, and if the board can proceed at all, they may apply the fund at their discretion, which we cannot believe was intended by this act; for we distinctly gather from the letter and the spirit of this law the intention to limit the power and restrict the discretion of the Board of Education in the erection of buildings and the purchase of sites for the schools of the district.

We think, too, that the amount of money to be raised must be designated by a certain gross sum. It would be difficult to use language which would convey this intention more plainly than this act does. Not only the language but the subject matter of the law shows that a gross sum was intended. The amount to be raised must be for a certain purpose previously determined by the meeting, therefore it *could* be estimated ; it is to be raised by tax, it must therefore be a certain sum. There are various reasons why the method adopted in this instance of determining the amount to be raised is insufficient. It is admitted in this case that the assessment for the present year was not completed at the time of this meeting, they could not therefore have known the amount which their action would yield. Again, the assessment roll is not equalized until a much later period, and changes may be and are continually made in it, by corrections and additions materially changing the amount as well at as prior and subsequent to the equalization. The sum actually raised, therefore, by a levy of two per cent. on the assessment may fall far short or may far exceed the amount required for the purposes determined by the meeting, and might materially affect their action in the premises. But again, the act prescribes that upon the amount voted being certified to them, the City Council shall proceed "to levy such amount of money upon the taxable property in said district." How can they levy the amount when it is uncertain ? Other reasons suggest themselves which we need not consider. The action of the meeting is clearly insufficient in not determining upon a certain sum for the purpose mentioned.

Nor are these defects cured or obviated by the closing language of the resolution : "The said site or sites and the kind of house or houses to be determined hereafter by the district." Admitting that the word "district," as here used, applies to the meeting of voters—which may well be doubted—the language just cited does not purport to affect the question as to the *number* of houses to be erected, nor except by implication, if at all, as to the number of sites, and certainly not as to the amount of money to be raised. But admitting that it referred the determination to a subsequent

meeting, clearly until the determination is made, a mandamus could not issue to levy the tax.

We are of opinion, therefore, that the meeting of legal voters must determine upon the number of houses to be erected, and the number of sites to be purchased, and must specify a definite and certain sum of money for such purpose, and that the action must precede the levying of the tax.

The mandamus is denied.